IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| WESTERN WATERSHEDS PROJECT, | ) ) ) | |
| Plaintiff, | ) | Case No. CV 07-161-E-MHW |
| v. | ) ) | **MEMORANDUM DECISION** |
| DIRK KEMPTHORNE, Secretary of the | ) | **AND ORDER** |
| Department of the Interior, and UNITED | ) | |
| STATES FISH AND WILDLIFE | ) | |
| SERVICE, an agency of the United States, | ) ) | |
| Defendants, | ) ) | |
| C.L. "BUTCH" OTTER, Govern of Idaho, | ) | |
| and THEODORE HOFFMAN, SCOTT | ) | |
| NICHOLSON, and L.G. DAVISON & | ) | |
| SONS, INC., | ) ) | |
| Defendant-Intervenors. | ) ) | |

## <u>INTRODUCTION</u>

Plaintiff, Western Watersheds Project ("Western Watersheds"), filed this action against

Dirk Kempthorne, Secretary of the Interior ("Secretary"), and the United States Fish and

Wildlife Service ("FWS"), also collectively referred to as the "Federal Defendants," for

declaratory and injunctive relief.  The action challenges the January 12, 2007, decision by the

Federal Defendants to withdraw a proposed rule to list Slickspot peppergrass (*Lepidium*

**Memorandum Decision and Order - Page 1**

*papilliferum*) as threatened or endangered under the Endangered Species Act ("ESA"), 16 U.S.C. § 1531, *et seq.* Defendant-Intervenors include Idaho Governor C.L. "Butch" Otter, as well as ranchers Theodore Hoffman, Scott Nicholson and L.G. Davison & Sons, Inc. Jurisdiction is proper under 28 U.S.C. § 1331, 28 U.S.C. § 2201 and 5 U.S.C. §§ 701-06. All parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c).

Western Watersheds is a non-profit conservation group headquartered near its Greenfire Preserve in Custer County, Idaho. The group consists of over 1400 members, plus professional staff, supporters and volunteers, located in Idaho and around the United States. Plaintiff asserts that members of Western Watersheds live and/or recreate throughout the sage-steppe ecosystem, within the range of the Slickspot peppergrass, deriving aesthetic, recreational, scientific, inspirational, educational and other benefits from the existence of Slickspot peppergrass in the sage-steppe ecosystem on a regular and continuing basis and intend to do so frequently in the immediate future.

The FWS, under the direction of the Secretary of the Interior, Dirk Kempthorne, is the United States agency that has been delegated the responsibility of implementing the ESA and its regulations with respect to terrestrial species.[1] Western Watersheds argues that the Federal Defendants have violated the ESA and/or the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, by issuing a final decision in January 2007 withdrawing its July 15, 2002 proposed rule to list Slickspot peppergrass as threatened. Western Watersheds claims this decision violates statutory mandates because the listing decision was not based on the "best available science" and the decision is arbitrary, capricious, contrary to law and an abuse of discretion.

---

[1] Secretary Dirk Kempthorne has recused himself from this decision process due to his prior position as the Governor of the State of Idaho.

After analyzing the results of the findings of an Expert Science Panel,[2] Manager Panels I and II had recommended that a listing of threatened be made.  Shortly thereafter, a final Manager Panel III recommended that the proposed rule be withdrawn.  The FWS contends that the recommendation of the Manager Panel III was based on "new" evidence that allegedly eroded their confidence in some earlier studies and data that the Expert Science Panel and Manager Panels I and II had relied on.

Currently pending before the Court for its consideration are Plaintiff's Motion for Summary Judgment (Docket No. 22), filed January 22, 2008, the Federal Defendants' Cross-Motion for Summary Judgment (Docket No. 29), filed February 22, 2008, and Defendant-Intervenor's Motion for Summary Judgment (Docket No. 31), filed February 22, 2008.

## I.
## Background

Congress enacted the Endangered Species Act to provide "a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species...." 16 U.S.C. § 1531(b).  A species receives the protections of the ESA when the FWS lists the species as "endangered" or "threatened."  A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6).  Similarly, a species is "threatened" if it "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." 16 U.S.C. § 1532(20).

The FWS shall list a species as endangered or threatened because of any of the following factors: "A) the present or threatened destruction, modification, or curtailment of its habitat or

---

[2] The Court will discuss the composition and finding of the panel later in this decision.

range; B) overutilization for commercial, recreational, scientific, or educational purposes; C) disease or predation; D) the inadequacy of existing regulatory mechanisms; or E) other natural or manmade factors affecting its continued existence."  *Id.* at § 1533(a)(1); 50 C.F.R. § 424.11(c). The FWS shall make listing determinations "solely on the basis of the best scientific and commercial data available after conducting a review of the status of the species . . ." 16 U.S.C. § 1533(b)(1)(A), 50 C.F.R. § 424.11(c).

Before the Secretary makes the final decision to list a species, he must publish a general notice and complete text of the proposed regulation. 16 U.S.C. § 1533(b)(5)(A)(1).  A period of public comment follows.  16 U.S.C. § 1533(b)(5).  Within one year, the Secretary must either publish a final rule designating the species for protection or, if he finds "that available evidence does not justify the action," withdraw the proposed rule.  50 C.F.R. § 424.17(a)(iii); *see also* 16 U.S.C. § 1533(b)(6).[3]

### A.     Slickspot Peppergrass (*Lepidium papilliferum*)

Slickspot peppergrass is a taprooted, intricately branched herbaceous flowering plant found only in the sage-steppe ecosystem of Idaho's Snake River Plain, Owyhee Plateau and adjacent foothills at elevations of approximately 2,200 feet to 5,400 feet.  AR 2-3, 4064, 18584. It is an annual or biennial plant that averages two to eight inches in height.  AR 2, 4071, 18584. The plant is associated with microsites known as slickspots, areas where water pools when it rains.  AR 4, 4074.  These sites are characterized by little vegetation, high concentrations of clay and salt, and reduced levels of organic matter and nutrients.  AR 3-4, 4072, 4074.

---

[3]  The Secretary may also delay a final decision for up to six months because of "substantial disagreement" in the scientific community regarding the "sufficiency or accuracy of the available data relevant to the determination or revision concerned." 16 U.S.C. § 1533(b)(6)(B)(i).

Above ground plants represent only a portion of the population, with the seed bank (a reserve of dormant seeds found in the soil) contributing the other portion.  AR 2.  Seeds can remain viable up to 12 years and the seed bank constitutes the majority of the population for many years.  *Id*.  The seeds have an extremely patchy distribution and can occur in slickspots with no above-ground plants.  AR 2-3.  Viable seeds have also been found outside of slickspots. *Id*.

Slickspot peppergrass is currently restricted to 85 delineated Element Occurrences[4] ("EOs") constituting 13,359 acres.  AR 6.  The FWS estimates that the actual acreage Slickspot peppergrass occupies is only a fraction of a percent of this total acreage.  *Id*.  The majority of slickspots are not occupied by Slickspot peppergrass and the slickspots occupy only a small percentage of the landscape.  *Id*.

Slickspot peppergrass abundance estimates are complicated by the plant's annual or biennial life cycles and the wide fluctuation in numbers of individuals of each life form depending on the annual amount and timing of rainfall.  AR 6-7.  The FWS found there was a significant correlation between plant numbers and spring precipitation.  AR 7.

The primary factors affecting Slickspot peppergrass are habitat based.  AR 21.  These include non-native annual grasses, effects of wildfire, drill-seeding and the forage species planted during fire rehabilitation, livestock grazing, vehicles, residential and agricultural development, military training, gravel mining, recreation, among others.  AR 21, 4123-4139, 18586-589.

---

[4] An element occurrence is "an area of land in which a species is or was present."  (AR 17394).

**B.      Listing History and Prior Litigation**

Although this Court is familiar with the listing history and prior litigation involving Slickspot peppergrass, as detailed in *Western Watersheds v. Foss*, Case No. CV 04-168-S-MHW, Memorandum Decision and Order (Docket No. 81), 2005 WL 2002473 (D. Idaho Aug. 19, 2005), it will be recounted briefly.

In 2000, the FWS began preparing a draft rule to list Slickspot peppergrass as endangered under the ESA. *Id*. at *4. The process was eventually halted for reasons the parties dispute and the FWS decided not to publish the proposed rule. *Id*. at *5. Western Watersheds filed a Listing Petition to compel the FWS to list Slickspot peppergrass under the ESA. *Id*. The FWS rejected this Listing Petition and the following year, Western Watersheds and another group sued the FWS in the District of Oregon for violations of the ESA. *Id*. This resulted in a settlement agreement in which the FWS agreed to submit for publication a listing proposal for Slickspot peppergrass by July 15, 2002 and to make a final determination by July 15, 2003. *Id*.

Public comment and peer review on the proposed rule was solicited in early 2003. *Id*. The FWS received strong resistance to this proposed listing from a variety of different sources and changed the listing designation from endangered to threatened. *Id*. at *6. On July 1, 2003, the Director of the FWS approved the final rule that listed Slickspot peppergrass as threatened. *Id*. The Air Force filed a challenge with the FWS in late March, 2003, during the drafting process, claiming the proposed rule violated the Information Quality Act. *Id*. at *7. A six-month extension occurred during which the FWS solicited additional data, including submissions from a panel of experts. *Id*.

At the end of this six-month period, the FWS published a notice on January 22, 2004

withdrawing the proposed rule to list Slickspot peppergrass as threatened under the ESA. *Id.* at

*13.  This decision was based on two reasons.  One, that there was insufficient evidence to

indicate a negative population trend and two, there was sufficient certainty that the conservation

measures described in the conservation agreements (the Candidate Conservation Agreement

(CCA) and the Air Force's Integrated Natural Resource Management Plan (INRMP)) would in

fact be implemented. *Id.*

Western Watersheds challenged this withdrawal before this Court in *Western Watersheds*

*v. Foss*, Case No. CV 04-168-S-MHW.  On August 19, 2005, this Court reversed the withdrawal

decision on the grounds that the FWS acted arbitrarily and capriciously and that the Secretary

relied on improper standards in determining that a listing was not warranted. *Id.* at *14-19.  The

Court remanded to the FWS to make a new listing determination. *Id.* at *19.

### C.    2006 Best Available Biological Information

After this Court's decision, the FWS began a the process of making a listing

determination, including soliciting information and data.  In February 2006, the FWS published a

document entitled "Draft Best Available Biological Information for Slickspot Peppergrass"

(2006 BAI").  AR 4057-4162.  This document updated the best available biological information

from the January 22, 2004 withdrawal notice.  AR 4061.

The 2006 BAI analyzed several data sources, including data maintained by the Idaho

Conservation Data Center ("IDCDC") ranking the habitat quality of Slickspot peppergrass

element occurrences ("EOs").  AR 4079.  The IDCDC has used two different methods to monitor

EOs.  From 1998 to 2002, the IDCDC used the Habitat Index Integrity Monitoring (HII).  AR

4089.  In 2004 and 2005, the IDCDC used Habitat Integrity and Population Monitoring (HIP) to

improve upon the HII monitoring by better addressing action and triggers identified in the Candidate Conservation Agreement.  AR 4094.

The IDCDC collected data on various transects in southwest Idaho using the HII and HIP methods.  AR 4089-4096.  In 1998, 37 transects were sampled and 17,460 individual Slickspot peppergrass plants were counted.  AR 15995.  In 2005, when the number of transects sampled more than doubled to 79, 29,508 plants were counted.  *Id*.

Since 1994, the IDCDC has ranked the health of Slickspot peppergrass EOs on an A-D scale, with A representing the highest quality habitat and greatest number of above-ground plants.  AR 4097.  Of the existing EOs, 16 were B-ranked,[5] 1 was BC-ranked, 26 C-ranked,[6] 5 C?-ranked, 19 D-ranked, and 1 D?-ranked.  AR 4097, 15995.  The rest were not ranked A-D either because of inadequate information, no plants were found, or the EOs were historical or extirpated.  *Id*.  Many of these EOs experienced a decrease in rankings.  AR 4109-4111.

In 2005, the IDCDC had revised its ranking criteria to give more weight to habitat and landscape context than population numbers.  AR 4097.  The 2006 BAI found that 20% of these previously ranked EOs had lower ranks "partially or completely because of documented negative changes in condition and/or landscape context."  AR 4109.  However, another 20% underwent an EO rank change completely because of the updated EO specifications or EO rank specifications, with no change in condition, size and/or landscape context.  *Id*.[7]  The 2006 BAI

---

[5]  A B-ranking means there are 300 to 999 detectable plants, an intact native plant community with low non-native plant cover and/or livestock disturbance, few anthropogenic disturbance, predominantly unburned, and a surrounding landscape within 1 km minimally to partially fragmented.  AR 4107.

[6]  A C-ranking indicates populations of fewer than 399 plants, partial to nonexistent native plant communities, and with partially to predominantly fragmented surrounding landscapes.  AR 4107.  77% of the EOs fall into this, or a lower, ranking.

[7]  54% underwent a rank change *partially* because of the updated EO specifications.  AR 4109.

noted that the ranking of EOs provides a broad idea of the health of an EO and illustrates habitat conditions that exist there, but that it was not a suitable method for tracking subtle changes in habitat or for determining population trend.  AR 4099.

The 2006 BAI also analyzed data from the Idaho Army Reserve National Guard (IDARNG).  The IDARNG has conducted monitoring of Slickspot peppergrass since 1990, longer than any other agency.  AR 4085.  Its monitoring efforts include demographic monitoring, an annual "census," yearly counts at special use plots, and habitat monitoring.  *Id*.  At the IDARNG's Orchard Training Area (OTA), located on the Snake River Plain, the number of Slickspot peppergrass individuals went from 67,756 in 1994, with a high of 134,949 in 1995, to 18,599[8] in 2005.  AR 4101, 17711.

The IDARNG also collected data from special use plots at the OTA.  One chart shows that 15,236 plants were counted in 1995 and only 2360 were counted in 2005.  AR 4102.  The 2006 BAI document stated that the causes of these changes in observed plant numbers was not completely understood and that it was unknown whether the changes in observed plant numbers represented a change in population trends.  AR 4101.

The 2006 BAI also described the factors affecting the species based on earlier findings made in 2003 by a panel of scientists.  AR 4123.  These included: non-native plant invasions, wildfire, livestock grazing, military training, residential and agricultural development, recreational vehicles, and others.  AR 4123-4129.

### D.    2006 Expert Science Panel

In May 2006, the FWS convened a panel of seven scientific experts, with expertise in

---

[8]  This number dropped to 8986 in 2006.  AR 13696.

high desert plants, to review the 2006 BAI.  These experts were to share their knowledge of Slickspot peppergrass, apply that knowledge in exercises and complete an extinction risk assessment.  AR 17374-8.  The experts were asked to estimate the time-frame in which they thought the species might likely become *extinct* (not merely threatened) by allocating "chips" among time-frames ranging from the next 20 years to more than 200 years from now.  AR 17574-674.  The time-frames were 1-20 years, 21-40 years, 41-60 years, 61-80 years, 81-100 years, 101-200 years, or 201+ years.  *Id.*  The panelists were to apportion their chips between the different time-frames to reflect the level of certainty regarding the chosen time-frames.  *Id.*

When the panelists made their decision on when Slickspot peppergrass would likely become extinct, based on the current condition, the panelists placed a majority of their chips anywhere in time-frames from 21-40 years to 101-200 years.  *Id.*  Seventy-five percent of the chips were in the placed in the range of 21-100 years.  *Id.*   The largest amount of chips were placed in the time-frame of 61-80 years.  *Id.*

Four of the expert panelists concluded that Slickspot peppergrass was more vulnerable in the Snake River Plain ("SRP") portion of its range, especially in comparison to the Owyhee Plateau region.  AR 17588-89, 17599, 17601, 17675, 17857, 17865.  Three of the expert panelists estimated extinction in the SRP within 21-40 years, three others estimated extinction within 41-60 years and one member estimated extinction within 61-80 years.  AR 17747.

There should be no dispute between the parties that the Snake River Plain represents a significant portion of the range for this species.  In summary, all members of the Expert Science Panel found that Slickspot peppergrass would be extinct in the Snake River Plain within 80 years.

### E.    Manager Panels I and II

In May 2006, four FWS managers (Manager Panel I) were convened to observe the Expert Science Panel and then discuss how to apply the ESA to Slickspot peppergrass, including making a listing recommendation.  AR 17789.  The managers defined "foreseeable future" as "not greater than 40 years based on considerations discussed in the manager panel."  AR 17675.

On a scoring exercise, Manager Panel I chose an "optimal listing category" for Slickspot peppergrass.  *Id*.  Manager Panel I concluded that Slickspot peppergrass was likely threatened, assessing 60-70 points out of a possible 100 to the threatened category, 20-35 for the not warranted category, and 0-15 for the endangered category.  *Id*.

In June 2006, the FWS convened a second manager panel (Manager Panel II).  AR 17817.  Manager Panel II's tasks included: refining the definition and application of ESA terms; reviewing and discussing the synthesis of Slickspot peppergrass abundance, threats and pertinent information both range-wide and in the Snake River Plain and Owyhee Plateau; and validating, refining, reviewing the optimal listing category and supporting rationale.  AR 17845.

Manager Panel II concluded that threatened was the most appropriate listing category.  AR 17832.  The key considerations for this conclusion were: (1) abundance data at the OTA could be reasonably extrapolated to the entire range; (2) threats at the Owyhee Plateau were not unlike the threats range-wide; (3) both the Snake River Plain and the Owyhee Plateau populations were necessary for maintaining the species; (4) review of the expert panelists' results of likely time of extinction for Snake River Plain only, as detailed in the last section; and (5) the Snake River Plain portion was likely to become endangered within the next 40 years.  AR 17832-833.  Manager Panel II also considered that both the Snake River Plain and Owyhee

Plateau populations were biologically significant to the sustainability of the species.  AR 17838.

In a PowerPoint presentation made at a July 24, 2006 briefing for the Director, the FWS made a listing recommendation of threatened.  AR 28519.  This presentation stated six conclusions from Manager Panel II, including: (1) threats to Slickspot peppergrass are range-wide; (2) the highest ranking threats, wildfire and non-native plants, are difficult to control; (3) few conservation efforts have been demonstrated to be effective at reducing the higher ranking threats; (4) the OTA which contains one of the few relatively unburned and intact native plant communities has experienced a sharp decline in abundance of Slickspot peppergrass that is not correlated with precipitation (40% occupied habitat); (5) between 1998 and 2005, range-wide, more EOs decreased in abundance than increased in abundance; (6) greater than 25% of EO acreage is dominated by non-native vegetation and is fragmented.  AR 28524.

F.    Listing Preparation

On June 6, 2006, the FWS Regional Director for Region 1 prepared a briefing statement for the Office of the Secretary recommending that the species be listed as threatened under the ESA.  AR 25924-25.  On July 11, 2006, the FWS prepared a final listing package.  AR 18558-60.  On July 19, 2006, Jeff Foss, Field Office Supervisor at the Snake River Fish and Wildlife Office, prepared a Memorandum Decision for the Director, outlining the rationale for the FWS's recommendation to list Slickspot peppergrass as a threatened species in preparation for a meeting with the Director.  AR 24928-31.  The memo stated that based on "assessment of the best available scientific and commercial information regarding the taxonomy, biology, life history requirements, habitat and conservation needs of Slickspot peppergrass, and the results of the seven-member Expert Science Panel, the Service is recommending that the plant is warranted

for listing as threatened under the Act."  *Id.*

On July 31, 2006, another briefing statement for the Office of the Secretary from the Regional Director was prepared.  AR 24914.  It recommended publishing the Final Rule listing Slickspot peppergrass as threatened and establishing critical habitat for the species.  *Id.*

In August 2006, Western Watersheds filed a motion to enforce this Court's August 19, 2005 decision, *Western Watersheds v. Foss*, 2005 WL 2002473 (D. Idaho Aug. 19, 2005).  The Court granted that motion and ordered FWS to publish a final determination by January 4, 2007. *Western Watersheds v. Foss*, 2006 WL 2868846 (D. Idaho Oct. 5, 2006).

On September 28, 2006, the Director met with Idaho's Senator Craig, Senator Crapo, and then-Congressman Otter, as well as attorney David Hensley from the Idaho Governor's Office of Species Conservation, to discuss the Slickspot peppergrass listing.  AR 27457; Declaration of Todd C. Tucci, ("Tucci Decl."), Ex. 2 (Docket No. 23-3).  During this meeting, the Idaho delegation expressed their interest in seeing the FWS consider the Candidate Conservation Agreements for Slickspot peppergrass in making a listing determination and expressed that Idaho officials and private landowners were cooperating on positive action to protect the species and feared a listing would cause them to "walk away from the table."  Tucci Decl., Ex. 2.

An information memorandum from FWS Director H. Dale Hall to the Secretary on October 9, 2006, noted that range-wide abundance data "illustrate a strong decline in plant numbers despite an increase in precipitation since 2003."  AR 27317.

### G.    New Information

On September 19, 2006, Field Office Supervisor Jeff Foss sent an e-mail to Kit Hershey in the FWS's Regional Office discussing new information on Slickspot peppergrass that was

received after the 2006 BAI had been released for public comment.  AR 24861-62.   Mr. Foss

believed the new information largely substantiated the FWS's current knowledge and analysis of

the species and would be relevant if additional public comment was sought.  *Id.*  The new

information consisted of: (1) 2006 field data from OTA showing census and plot data at half of

the number of plants counted in 2005; and (2) a Menke & Kaye report ("Menke and Kaye 2006b

report"[9]) providing statistical analysis for 20 of the 85 EOs correlating spring precipitation with

plant abundance.  *Id.*

       FWS decided to open a comment period to allow public comment on this new

information.  AR 24856, 24811, 24775-83, 24732-73, 27168-253, 27297-315, 27318-27.  The

notice to reopen the comment period for 22 days was published on October 23, 2006.  71 Fed.

Reg. 62078.  The period closed on November 13, 2006.  *Id.*

       On November 2, 2006, a conference call between senior FWS officials took place to

discuss Slickspot peppergrass.  AR 27157-58.  FWS biologists Michele Zwartjes, Ph.D, and Ann

Carlson took handwritten notes.  *Id.*  The definition of foreseeable future was discussed, with a

note that it was to be redefined to 20 years.  *Id.*  Also, the Expert Science Panel and Manager

Panels I and II's findings were discussed, as well as the Policy for Evaluation of Conservation

Efforts ("PECE") and the greatest threats to the species.  *Id.*

       On November 18, 2006, Mr. Foss drafted a memo to Regional Assistant Director Terry

Rabot describing phone conversations with the IDARNG's staff biologists regarding the

Slickspot peppergrass census data methodology at the OTA.  AR 13787-829.  In the memo, Mr.

Foss states that he and his staff first learned of this information at a November 16, 2006 meeting

_____

       [9]  There were two Menke and Kaye reports from 2006.  One was released in March, and is referred to as
Menke and Kaye 2006a, and another was released in June, known as Menke and Kaye 2006b.

with Dana Quinney and Marjorie McHenry of the IDARNG.  AR 13788.  Mr. Foss concluded

the following: (1) that the FWS's previous understanding of the "census" data is more accurately

characterized as survey data because it does not count every plant in the area surveyed, it is a

"rough census"; (2) the "census" area does not represent 98% of the total occupied habitat at

OTA as previously thought;[10] (3) new surveys are finding slickspots with Slickspot peppergrass

that were previously undetected; and (4) the FWS's previous statements about the population

trend at the OTA need to be reconsidered in light of the clarifications provided by the IDARNG.

AR 13816.

Mr. Foss's concern that the survey data did not accurately depict whether the population

counts by IDARNG showed a decline in plant numbers during all of the years at issue was not

shared by the IDARNG staff.  IDARNG Biologist Dana Quinney, who was actually involved in

the methodology for the surveys, stated she considered the census to be representative of

population trends for those years, that the change in plant numbers year to year is in fact

comparable and an indicator of trends for that area.  AR 13816.

## H.    Manager Panel III

On November 21, 2006, the FWS convened a new manager panel ("Manager Panel III")

to discuss the new information, including the Menke and Kaye 2006b report, the OTA annual

census method, and the 2006 public comments.  AR 18216-58.

Manager Panel III discussed the census methodology of the IDARNG at the OTA and

noted that the rough census data is an "indicator of trend at OTA but we cannot reasonably

extrapolate those results range-wide given the methodology...and other variables."  AR 18243-

---

[10] Apparently it represents 90% of the total occupied area, a minor drop of 8%.  AR 7.

44.  A consultant, URS Corporation, counted about 31,000[11] Slickspot peppergrass plants in 2005 in the same general area where the OTA annual rough census reported 18,599 plants.  AR 18218.  The panel noted that it could not say "with certainty that if the science panel were held now that the results, particularly extinction risk of the [Snake River Plain], would be the same as results from the May 2006 science panel."  AR 18246.  Manager Panel III also looked at the Menke and Kaye 2006b report which found that spring precipitation accounted for 89% of the variation in plant abundance for the years 1998-2002 and 2004 and that years with greater precipitation generally had greater numbers of Slickspot peppergrass.  AR 18216.

In the materials provided to this manager panel, there are several graphs which compare the abundance of Slickspot peppergrass plants to the precipitation for any given year.  AR 13687-721.  Also provided in the materials was plant abundance data based on HII and HIP monitoring for transects that the FWS had complete data on for the years 1998-2001 and 2004-2005.  AR 13710.  The total plant count for these 33 transects was 17,612 in 1998 and 15,226 in 2005.  *Id*.

The Snake River Plain (SRP) and Owyhee Plateau portions were also examined by Manager Panel III.  AR 18254.  The panel concluded that the SRP had more abundant, but also more isolated and fragmented, EOs, whereas the Owyhee Plateau had more contiguous but less abundant EOs.  *Id*.  Overall, the panel considered the threats to Slickspot peppergrass and its ability to persist are "relatively similar across its range" with the SRP considered to be more vulnerable to extirpation.  *Id*.

The panel noted that it was speculative as to how this new information, which was not

---

[11]  The total numbers of plants inventoried by URS was 43,925.  AR 18218.

available at the time of the Expert Science Panel, would affect its estimation of extinction risk. AR 18255.  Manager Panel III concluded that it did not consider Slickspot peppergrass "in danger of extinction throughout all or a significant portion of its range nor likely to become an endangered species within the foreseeable future throughout all of a significant portion of its range" based on its review of the new information and other information in the administrative record.  AR 18258.

### I.      2007 Withdrawal Notice

On November 29, 2006, the FWS began drafting a new rule detailing that the listing of Slickspot peppergrass under the ESA was not warranted.  AR 24470-571, 24312-429.  The withdrawal notice concluded that the species is not endangered or threatened in all or a significant portion of its range.  AR 24.  The FWS found that there is no correlation between species abundance and the degraded broad scale habitat in which the species exists; that annual abundance is strongly correlated with spring (March-May) precipitation, creating an expectation of a high degree of variability in annual abundance; and range-wide population has increased in recent years in association with increased rainfall.  *Id*.

### II.
### Standard of Review

Judicial review of final agency actions under the Endangered Species Act is governed by the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*.  Under the APA, an agency action must be upheld unless it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *Friends of the Earth v. Hintz*, 800 F.2d 822, 830-31 (9th Cir. 1986).  To decide if an agency action is arbitrary and capricious, the court must determine whether the agency considered the relevant factors and articulated a rational

connection between the facts found and the choices made. *Pac. Coast Fed'n of Fishermen's Ass'n, Inc. v. NMFS*, 265 F.3d 1028, 1034 (9th Cir. 2001).  As long as the agency decision was based on the relevant factors and there is no clear error of judgment, the reviewing court may not overturn the agency's action as arbitrary and capricious.  *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989).  *See also Arizona v. Thomas*, 824 F.2d 745, 748 (9th Cir. 1987).

"Deference to an agency's technical expertise and experience is particularly warranted with respect to questions involving . . . scientific matters." *United States v. Alpine Land and Reservoir Co.*, 887 F.2d 207, 213 (9th Cir.1989), cert. denied, 498 U.S. 817 (1990). Nevertheless, the "presumption of agency expertise may be rebutted if the decisions, even though based on scientific expertise, are not reasoned." *Greenpeace v. NMFS*, 80 F. Supp. 2d 1137, 1147 (W.D.Wash. 2000). "Where an agency fails to articulate a rational connection between the facts found and the choice made, the Court may not supply a reasoned basis for the agency's action that the agency itself has not given."  *Defenders of Wildlife v. Babbit*, 958 F. Supp. 670, 679 (D.D.C. 1997) (internal quotation marks and citations omitted).

Judicial review under this standard is to be "searching and careful," but remains "narrow," and a court should not substitute its judgment for that of the agency.  *Mt. Graham Red Squirrel v. Espy*, 986 F.2d 1568, 1571 (9th Cir. 1993).  An agency action should be overturned only when the agency has "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

**Memorandum Decision and Order - Page 18**

### III.
### Best Available Science

The FWS is required to base its listing decision "solely on the basis of the best scientific and commercial data available . . ."  16 U.S.C. § 1533(b)(1)(A).  The best available science standard prohibits an agency from disregarding available scientific evidence that is "somehow better than the evidence [it] relies on."  *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1080 (9th Cir. 2006) (citation omitted).  The agency must consider the evidence presently available and may not insist upon conclusive scientific evidence in order for a listing to be warranted.  *Defenders of Wildlife v. Babbit*, 958 F. Supp. 670, 680 (D.D.C. 1997).  This standard reflects Congress's intent that the FWS take conservation measures before a species is "'conclusively' headed for extinction."  *Id*.  In that case, the court found that the FWS acted arbitrarily and capriciously when it made several unsupported statements containing factual errors contradicted by the evidence and also when it rejected the views of its own experts that the species satisfied four of the listing criteria.  *Id*. at 681-83.

### IV.
### Discussion

As noted, whether Slickspot peppergrass should or should not be listed has been on-going since at least 2000.[12]  In June 2006, Manager Panel II had finally decided to make a recommendation to list Slickspot peppergrass as "threatened."  Five months later, in November 2006, Manager Panel III recommended that a listing was "not warranted."  The FWS relies on "new information" that came to light between the June 2006 Manager Panel II and the November 2006 Manager Panel III for the 180-degree shift in its recommendation

---

[12]  In 2000, a rule was drafted to list Slickspot peppergrass as endangered.  In 2003, a final rule was proposed by the Director of the FWS to list the species as threatened.

**Memorandum Decision and Order - Page 19**

**A.      Recommendation of Manager Panel II to List as Threatened**

Based on the FWS's analysis, public comment, peer reviewed science and results of the seven-member independent science panel, the FWS recommended listing Slickspot peppergrass as threatened.  AR 28519.  Manager Panel II was aware that estimating population was confounded by its annual/biennial life cycle and the presence of a "long-lived" seed bank.  AR 4080, 4085.  It was also aware that spring precipitation was a highly important factor in Slickspot peppergrass abundance.  AR 17875, 17892, 17893.  In consideration of all the information before it, Manager Panel II found that the Slickspot peppergrass habitat was facing significant threats, particularly wildfire and non-native invasive plants, that were widespread, range-wide, difficult to control, and not being effectively reduced by conservation efforts.  AR 28524.  A draft press release from August 2006 noted that the majority of expert panelists found that the species will likely become *extinct* within the next 80 years under current management. AR 27153.  All seven panelists indicated that the Snake River Plain population would be extinct within 80 years.  AR 24913.  Based on those estimates and the threats facing the species range-wide, the FWS determined Slickspot peppergrass to be a threatened species.  AR 27153.  The FWS was also preparing to propose 33,000 acres of federal land as critical habitat designation for Slickspot peppergrass.  AR 24913.  No private land was identified for critical habitat designation.

Manager Panel II placed great emphasis on the threats to the Slickspot peppergrass habitat in making their recommendation.  Service Manager A noted that his/her guiding assumption for assigning 60 points to the "threatened" category was that "the predominant threats of fire and invasive non-native plants are occurring at a scale and rate that cannot be meaningfully reduced."  AR 17860.  Service Manager B, in assigning 70 points to threatened,

noted: "Although abundance data is very limited, I believe sufficient data was presented on habitat condition and distribution of occupied sites to document a high likelihood that the suitability of these sites (and therefore the number of plants will continue to decline), especially in the Snake River portion of the range."  AR 17862.  Service Manager C assigned 65 points to threatened and summarized: "[I]f current trends in fire, conversion of sagebrush habitat to cheatgrass, grazing, and development continue, there is a greater likelihood than not that the species will become functionally extinct within the foreseeable future or shortly thereafter in the SRP, a significant portion of the species range . . ."  AR 17869.  The last panelist, Service Manager D, assigned 70 points to "threatened" and noted that cheatgrass and "shorter fire frequency and intensity brought about by cheatgrass" and the ability of cheatgrass to outcompete Slickspot peppergrass represented significant threats.  AR 17871.  The managers also emphasized the conclusions that the Expert Science Panel had reached during its meeting.  AR 17852-4, 17862-63, 17866-67, 17887.

### B.    Reconsideration of Manager Panel II's Recommendations

As discussed above, after Manager Panel II had made its listing recommendation, the FWS asserts that new information came to light that caused the FWS to change its recommendation and decide that a listing was not warranted.  This new information consisted of the Menke and Kaye 2006b report, the URS survey, and information regarding the OTA census methods.  None of this information directly addressed the declining habitat which the 2006 BAI, Expert Science Panel and Manger Panels I and II had placed such great emphasis on.

With regard to the Menke and Kaye 2006b report, Manager Panel III and the 2007 Withdrawal Notice stressed the importance of the correlation between precipitation and abundance, specifically the statistic that spring precipitation accounted for 89% of the variation

in plant abundance.  This report analyzed 20 of the 85 existing EOs.  AR 24861.  Although great emphasis was placed on this correlation, this relationship had long been recognized in different reports as noted by Manager Panel II and the 2006 BAI document.  AR 17875, 17892, 17893, 4080, 4085.  It was not "new" information.  A 2005 report conducted by Palazzo et al. noted that there is a strong correlation between annual plant counts and the amount of precipitation.  AR 844.  Probably one of the most pertinent observations by Palazzo is that yearly surveys of plant populations do not provide a comprehensive assessment of the species' population due to the high fluctuations in plant numbers.  AR 842-44.  These fluctuations are possibly explained by the plant's relationship with climatic conditions.  *Id.*

The 2007 Withdrawal Notice cited the Menke and Kaye 2006b report approximately 45 times.  AR 1-24.  While the 2007 Notice of Withdrawal was citing the Menke and Kaye 2006b report for its correlation between precipitation and plant numbers, it never mentioned some of the findings by Menke and Kaye in the Executive Summary.  *Id.*  The Executive Summary concluded that declining population trends indicated a decrease in abundance range-wide, and that several features of the slickspots and its habitat, including soil crust cover and vascular plant cover, have decreased since 1998 due to previous fires and livestock use.  AR 788.  It would appear that the FWS chose to parse the report of Menke and Kaye, endorsing the portion that correlated rainfall with plant numbers, but not commenting at all on their finding that, "Overall, element occurrences of L. papilliferum had negative (declining) population trends between 1998 and 2004, indicating they were decreasing in abundance range-wide."  AR 788.  While climatic factors did drive trends, Menke and Kaye also noted the importance of habitat, which had also declined between 1998 to 2004.  *Id.*  Declining habitat quality was one of the primary factors relied on so heavily by the Expert Science Panel and Manager Panels I and II.

**Memorandum Decision and Order - Page 22**

Also part of this new information was insight from the IDARNG as to how it conducts its census.  The FWS was previously under the impression that the survey covered 98% of the plants' habitat at OTA, but came to understand that 90% was a more accurate estimate of the amount of habitat surveyed.  AR 7.  Because of this information, the FWS now felt that this data could not be extrapolated range-wide, a change from its previous position.  AR 18220, 18243.  However, despite the reduction in habitat surveyed, 98% to 90%, IDARNG Biologist Dana Quinney stated she considered the census to be representative of population trends for those years, that the change in plant numbers year to year is an indicator of trend for that area.  AR 13816.  It would appear to the Court that if the IDARNG was using the same survey methodology each year, even if they were not counting every plant each year, that trends would still be observable and could be relied on by the FWS.

After Manager Panel III made its recommendation, the FWS began to draft the withdrawal notice.  During this process, in December 2006, Chris Nolin of the FWS noted in an e-mail: "the Snake River Basin stuff is really problematical.  They can foresee its extirpation, and the experts say that it is essential to existence - any way we can deal with that?  Is it really that cut and dried as that or are there some helpful uncertainties??" AR 23985-987.  In response to these questions, Scott McCarthy, from the FWS Division of Listing, noted: "[I] believe the discussion regarding the disconnect between the OTA and Menke and Kaye results in the last couple of years is relevant to your Snake River concerns.  The foreseeable future record is problematic so we are downplaying the results of that and pointing to the fact that even though we acknowledge threats to sage-brush, there is nothing that documents rangewide (or even of local) significant declines of [Slickspot peppergrass] . . . our attempt will be to focus on the uncertainties as outweighing the extinction risk assessments." *Id*.

**Memorandum Decision and Order - Page 23**

On a draft of the withdrawal notice from December 21, 2006, there are comments made by FWS Biologist Michele Zwartjes.  With regard to the spring precipitation information, she stated:  "Although there is a strong correlation between rainfall and abundance, it is overstating our knowledge to say that precipitation is the sole driving factor and threats are not having any impact on the species . . . We feel that in order to be as accurate and unbiased as possible, it important to stress *the uncertainty* in the data, which is what is driving this withdrawal."  AR 26570 (emphasis added).  She also made changes to conclusions finding that invasive species, livestock use and residential and agricultural development were "not a threat" or not a "significant threat."  She noted these conclusions were overstated, could not be made based on one single year of data, and that even Menke and Kaye mention that these threats may be impacting the species in ways that were not measured in their study.  AR 26619, 26625, 26632.

During this same time period, Jeff Foss commented on a draft withdrawal notice, that "To state that we '*are not predicting extinction at any point in time*' and that '*we cannot conclude based on the new information that there is any likelihood of extinction*' is problematic . . . To conclude [this] is to assume that the new information if made available to the science panel of 7 experts would have led them to conclude that the species is not at any risk of extinction. This logic path is not supported by review of the rationale provided by the 7 experts from their score sheets . . . Their rationale pointed to a number of considerations including continued decline of the sagebrush steppe ecosystem from threats including wildfire and invasive species." AR 26473 (emphasis in original).  He also noted: "Throughout the record the decline of sagebrush steppe is noted.  Therefore, to conclude that the species is not at any risk of extinction is to assume that the sagebrush-steppe ecosystem is no longer facing threats nor decreasing in quality . . . which is inconsistent with the peer-reviewed literature and extensive data for the

**Memorandum Decision and Order - Page 24**

sagebrush-steppe ecosystem where this plant occurs." AR 26473, 26475.

These e-mails and comments show the internal thought process of the FWS during the last few months prior to the withdrawal notice. Even the FWS staff had concerns that the data and research did not match the conclusions being made regarding the factors affecting habitat and risk of extinction. The FWS was looking for uncertainty to inject into the Withdrawal Notice to justify its ultimate conclusion not to list the species.

### C.    The Expert Science Panel

The Expert Science Panel reviewed and relied upon the 2006 BAI which received 46 peer reviews and public comments. AR 24912. Included in the BAI was information from various studies finding that the number of Slickspot peppergrass individuals fluctuates widely depending on precipitation and that spring precipitation determines the annual success of the plant. AR 4080. Because the Expert Science Panel reviewed this document, it was aware of the correlation between spring precipitation and abundance. Other reports included in the BAI had observed this same relationship.

Additionally, although Manager Panel III took issue with the "census" data from the OTA, the Expert Science Panel had more than just this data before it when it estimated extinction risks for Slickspot peppergrass. It also had special use plot data from the OTA, HII/HIP data from the IDCDC, and EO rankings from the IDCDC. It was all this information that the Expert Science Panel relied on in predicting extinction of the plant in the Snake River Plain, a significant portion of this species' range, within 80 years.

The ESA requires that the FWS make a listing decision, "solely on the basis of the best scientific . . . data available after conducting a review of the species . . ." 16 U.S.C. § 1533(b)(1)(A); 50 C.F.R. § 424.11(c). In its withdrawal notice, the FWS determination relies

**Memorandum Decision and Order - Page 25**

heavily on the Menke and Kaye 2006b report.  Since this was not included in the BAI document, it was not peer reviewed nor examined by the Expert Science Panel.  Because of the reliance placed on this report, the FWS should have submitted this report to the experts for their review to ensure that the FWS had the best available scientific information in front of it when making its listing determination.  Admittedly, the FWS was under a time-crunch, but it did not even attempt to get the expert panel's input.

The Expert Science Panel could have provided feedback as to how this new information would or would not have altered the panelists' previous extinction risk estimates which Manager Panel II relied heavily on in making its "threatened" recommendation.  Instead, Manager Panel III was assembled, and based on "new information," completely changed the earlier recommendation.  The Expert Science Panel's opinions were based in great part on the threats to the Slickspot peppergrass habitat.  This new information did not provide any novel insight into these threats.  The FWS however, in its withdrawal notice, found "no evidence" and "no correlation" of these habitat factors threatening the species, although the Expert Science Panel and Manager Panels I and II felt otherwise.  As noted by Jeff Foss, after this new information had come to light, a finding by the FWS that the sagebrush-steppe ecosystem is no longer facing threats nor decreasing in quality would be inconsistent with the peer-reviewed literature and extensive data.

## V.
## Conclusion

The Court agrees with the Federal Defendants that the FWS is not required to adhere to the conclusions of the Expert Science Panel.  However, the process the Expert Science Panel went through in this case, sharing knowledge of the species and applying that knowledge through various exercises, would be fundamental in helping the FWS obtain the best scientific

data to evaluate during its decision-making process.

The members of Manager Panel II all noted the Expert Science Panel's discussion and extinction risk estimates in discussing the rationale behind their "optimal listing category" assessments.  It is clear that the Expert Science Panel's input played a significant role in Manager Panel II's  recommendation.  However, the three pieces of new scientific information that were relied upon in making the decision that listing was not warranted were never evaluated and discussed by any group of experts.  Faced with the Expert Science Panel's estimation of extinction risk for Slickspot peppergrass, the logical course would have been to allow the prior Expert Science Panel, or a different group of experts, consider and evaluate the new information and see if it would change the earlier extinction risk estimates.  That would have been the path to the best scientific data for the FWS to then evaluate.

It is true that Menke and Kaye 2006b report does confirm earlier reports and studies that there was a correlation between precipitation and population numbers.  However, as noted, Menke and Kaye also found that plant abundance was declining.  What is absent from the FWS's final analysis is how the new information changed the experts' and earlier manager panels' findings that there were significant threats to the sagebrush-steppe ecosystem, including wildfires and non-native invasive species, that were not going away and not being addressed by conservation measures.  The experts noted in great detail that the major threats to Slickspot peppergrass (fire, invasive species, grazing, development) were not going to diminish in the future and even with conservation plans, loss of habitat will occur.  AR 17574-606.  This is what their extinction risk estimates were based on.  AR 17574-614.  Manager Panel III barely discussed these concerns.  Instead, the FWS found that there was no evidence of a correlation between these habitat factors and a decline in abundance and therefore, they were not significant

threats.  The FWS attempts to rely on uncertainty to justify the little consideration it gives these factors in determining the status of the species.  Scientific certainty is not required to justify the listing of a species.  *See Defenders of Wildlife v. Babbitt*, 958 F. Supp. 670 (D.D.C. 1997).  The decision must be based on the best available science, not conclusive science.  *Id.*  The FWS's determination that there was no correlation between the degraded habitat quality and plant numbers flies in the face of the earlier findings of the Expert Science Panel and Manager Panels I and II.

The Court finds that the FWS's decision to change course based on the new information, without submitting it for review and evaluation by any group of experts resulted in a decision that was not based on the best available science.  Given an opportunity to review the new information, perhaps the experts would have agreed with the conclusion of Manager Panel III, that no listing was warranted.  But to use the FWS's own phrase, we are now left to speculate how they would have evaluated this new information in light of all the other information and reports in the 2006 BAI.

Based on the reasons expressed above, the Court finds that the 2007 Withdrawal Notice is arbitrary and capricious under § 706 of the APA.  Accordingly, the Court will grant Plaintiff's Motion for Summary Judgment, reverse the decision to withdraw the proposed rule and remand to the FWS for further consideration consistent with this opinion.

## ORDER

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)      Plaintiff's Motion for Summary Judgment (Docket No. 22), filed January 22, 2008, be **GRANTED**;

**Memorandum Decision and Order - Page 28**

2)      Federal Defendants' Cross-Motion for Summary Judgment (Docket No. 29), filed

February 22, 2008, be **DENIED**; and

3)      Defendant-Intervenors' Cross-Motion for Summary Judgment (Docket No. 31),

filed February 22, 2008, be **DENIED**.


DATED: June 4, 2008

_____
Honorable Mikel H. Williams
United States Magistrate Judge