IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| WESTERN WATERSHEDS PROJECT, | ) ) ) | |
| Plaintiff, | ) | Case No. CV 07-161-E-MHW |
| v. | ) ) | |
| DIRK KEMPTHORNE, Secretary of the Department of the Interior, and UNITED STATES FISH AND WILDLIFE SERVICE, an agency of the United States, | ) ) ) ) ) | **MEMORANDUM DECISION AND ORDER** |
| Defendants, | ) ) | |
| C.L. "BUTCH" OTTER, Govern of Idaho, and THEODORE HOFFMAN, SCOTT NICHOLSON, and L.G. DAVISON & SONS, INC., | ) ) ) ) ) | |
| Defendant-Intervenors. | ) ) ) | |

Currently pending before the Court is the Federal Defendants' Motion to Alter or Amend the Judgment and/or for Clarification (Docket No. 48), filed June 18, 2008 and Plaintiff's Motion to Alter or Amend Judgment (Docket No. 49), filed June 18, 2008.

The Court observes that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, these motions shall be decided on the record before this Court without a hearing.

**Memorandum Decision and Order - Page 1**

# I.
# Background

The Court and parties are familiar with the relevant facts of this case and they will not be recited here.  Most recently, on June 4, 2008, the Court issued a Memorandum Decision and Order ("Order") finding that the Fish and Wildlife Service's 2007 Withdrawal Notice was arbitrary, capricious, and not based on the best available science.  The Court remanded to the United States Fish and Wildlife Service ("FWS") for further consideration consistent with its opinion.

Both parties have now brought motions to alter or amend the judgment.  The Federal Defendants request that the Court amend or clarify its Order.  The FWS perceives the opinion as requiring, ". . . the Service to gather and generate additional scientific information from a group of experts before making a final listing determination, rather than evaluating whether the Service failed to consider available scientific or commercial data."  Memorandum in Support of Federal Defendants' Motion to Alter or Amend the Judgment and/or for Clarification, p. 5 (Docket No. 48-2).   Plaintiff asks the Court to alter or amend the judgment by ordering the FWS to issue a new final listing decision by March 1, 2009.

# II.
# Discussion

## A.      Standard of Review

A motion to alter or amend judgment is governed by Federal Rule of Civil Procedure 59.  A court has considerable discretion in deciding whether to alter or amend a judgment.  *Turner v. Burlington N. Santa Fe R.R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003).  A motion to alter or amend a judgment maybe granted if:  "1) the motion is necessary to correct manifest errors of

law or fact upon which the judgment is based; 2) the moving party presents newly discovered or

previously unavailable evidence; 3) the motion is necessary to prevent manifest injustice; or 4)

there is an intervening change in controlling law." *Id*. (internal quotations omitted).

**B.      Federal Defendants' Motion to Alter or Amend and/or Clarify**

The Federal Defendants contend that the Court erred in holding that the FWS violated the

best scientific and commercial data available standard by not soliciting the opinions of experts

on newly available information and by not considering that opinion in making its final listing

determination.  In their view, the Court erroneously held that the best available science standard

requires the FWS to gather or generate additional scientific information from a group of experts

before making a final listing determination.  They assert that the FWS is not obligated to collect

data that is not already available at the time it makes a listing determination.  The Federal

Defendants point out that there is no distinction between "field data" and data generated by

experts when it comes to the "best scientific and commercial data available."

The Federal Defendants cite several cases in support of their argument.  These cases set

forth that the "best scientific and commercial data available" standard cannot require the FWS to

conduct independent studies.  *See Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1080 (9th

Cir. 2006); *Southwest Ctr. for Biological Diversity v. Babbitt*, 215 F.3d 58, 61 (D.C. Cir. 2000).

The Federal Defendants ask the Court to clarify its Order and the scope of remand. They contend

that it is unclear from the Order whether the FWS is to convene a group of experts to comment

on the new information, to undertake a completely new process to make a final listing

determination, or to issue a final listing determination without convening an expert panel.

The Court will first discuss some of the general requirements imposed on agencies

**Memorandum Decision and Order - Page 3**

in the area of utilizing the best scientific evidence and then why the cases cited by the Federal

Defendants are inapposite to the facts of this case.

      **1.**     **Factors Pertaining to a Listing Determination Based on the Best Scientific Data Available**

The Court has found that the FWS did not consider the best scientific evidence when it

issued its 2007 Withdrawal Notice.  The parties are well aware that as a part of the listing

determination process, the Endangered Species Act ("ESA") requires that an agency reach its

decision based on the "best scientific and commercial data available."  16 U.S.C.

§ 1533(b)(1)(A).  As stated by the Supreme Court, "The obvious purpose of the requirement that

each agency 'use the best scientific and commercial evidence available' is to ensure that the ESA

not be implemented haphazardly, on the basis of speculation or surmise."  *Bennett v. Spear,* 520

U.S. 154, 176 (1997).  Since this Court has found that this provision was violated, the matter was

remanded to the FWS for further proceedings.

An agency has a fair degree of latitude in deciding what rational approach should be used

to comply with the statutory mandate that its decision be based on the "best" scientific evidence

then available.  In some cases the agency may relay on its own in-house biologists as experts to

gather and analyze scientific information relating to a particular species.  *See, e.g., Northern*

*Spotted Owl, et al. v. Hodel,* 716 F. Supp. 479 (W.D. Wash. 1988).  In other cases, such as here,

an agency may turn to outside experts to constitute the necessary scientific forum to develop and

analyze the best available science.  Once these experts have opined on matters such as whether a

species is in danger of being threatened or endangered based on the best available scientific

evidence, it can then be left to the agency managers to make the final decision of whether the

listing requirements set forth in 16 U.S.C. § 1533(a)(1) have been met.[1]

When deciding on a particular methodology to obtain and review the scientific information, it is proper for the courts to defer to the agencies in such areas. "The rationale for deference is particularly strong when the [agency] is evaluating scientific data within its technical expertise. '[I]n an area characterized by scientific and technological uncertainty[,] . . . this court must proceed with particular caution, avoiding all temptations to direct the agency in a choice between rational alternatives.'" *Int'l Fabricare Inst. v. EPA,* 972 F.2d 384, 389 (D.C. Cir. 1992) (quoting *Envtl. Defense Fund, Inc. v. Costle,* 578 F.2d 337, 339 (D.C. Cir. 1978).

In its request for clarification, the Federal Defendants ask the Court to choose which path the FWS should now follow to develop and consider the best available scientific evidence upon which to base its decision. The Court, however, is reluctant to do so since there may be several rational options available to amass and consider the best scientific information. With that being said, one option suggested by the FWS, to issue a final listing determination without convening an expert panel, would certainly be subject to a future challenge. Basically, this is what was done in this case when the extinction risk estimates arrived at by the seven experts were supplanted by FWS managers who were not experts in the field of high desert plants.

But as general guidance and to the extent it was not clear in the Order, the Court found no legal error with the methodology used by the FWS up through the decisions that were made by Manager Panels I & II. The FWS assembled studies, reports, field data and other information into the February 2006 Draft Best Available Information and submitted it for peer review and comments. In May of 2006, the FWS convened a panel ("Science Panel") of seven scientific

---

[1] Plaintiff refers to this process as a structured decision-making approach. A similar process occurred in *Western Watersheds Project v. Fish and Wildlife Service,* 535 F. Supp. 2d 1173 (D. Idaho 2007) (pending appeal).

experts, with expertise in high desert plants, to review the 2006 BAI.  These experts shared their knowledge of Slickspot peppergrass, applied that knowledge in exercises and completed extinction risk assessments.  The findings of the Science Panel are set forth on page 10 of the Order and will not be repeated, except to note that 75% of the chips used by the experts were place in a category predicting *extinction* with 21-100 years.  At the next level, where FWS managers analyzed the finding of the Science Panel, both Manager Panels I & II concluded that threatened was the appropriate listing category for the plant.

The Court endorsed this decision making process when it stated that it would have been logical for the "new" information to have been presented to Science Panel for review and consideration, as well as taken into account as part of their extinction risk assessment.  Why was this not done?  As gleaned from the e-mails among FWS managers, the FWS was seeking to inject uncertainty into the process to justify not listing the species.  The Court will not repeat all of the e-mails discussed in the Order.  However, the e-mail from Jeff Foss shortly before the publication of the 2007 Withdrawal Notice is particularly telling.  Mr. Foss advised other FWS personnel: "To state that we '*are not predicting extinction at any point in time*' and that '*we cannot conclude based on the new information that there is any likelihood of extinction*' is problematic . . . To conclude [this] is to assume that the new information if made available to the science panel of 7 experts would have led them to conclude that the species is not at any risk of extinction.  This logic path is not supported by review of the rationale provided by the 7 experts from their score sheets . . . Their rationale pointed to a number of considerations including continued decline of the sagebrush steppe ecosystem from threats including wildfire and invasive species."  AR 26473 (emphasis in original).  He also noted: "Throughout the record the decline

of sagebrush steppe is noted.  Therefore, to conclude that the species is not at any risk of

extinction is to assume that the sagebrush-steppe ecosystem is no longer facing threats nor

decreasing in quality . . . which is inconsistent with the peer-reviewed literature and extensive

data for the sagebrush-steppe ecosystem where this plants occurs."  AR 26473, 26475.

      When the FWS decided to not present the new information to the Science Panel,  the

FWS violated the requirement to base their decision on the best available scientific evidence.

Surely the FWS is not now contending that they went through all of the effort of assembling the

2006 BAI, having it peer reviewed, and convening seven experts in high desert plants to study

the information *if* that entire process would in some manner give them something *less* than the

best scientific information upon which to make their decision.   To put it another way, having the

FWS managers, who were not experts on high desert plants, decide that the Slickspot

peppergrass was not a threatened species based on their own interpretation of the "new"

evidence was not based on the best scientific evidence then available.  If these managers were

experts in this field, then one may properly ask why the Science Panel was thought to be

appropriate and important in the first place.  And without going through each item of "new"

evidence, it is particularly troubling that the Science Panel never had an opportunity to comment

on the Executive Summary in the Menke and Kaye 2006b report, which states that declining

population trends of Slickspot peppergrass indicated a decrease in abundance range-wide.

Rather than contradicting the extinction risk assessment by the Science Panel, the new

information could have very well offered further support for the conclusions of the Science

Panel.

      The Court agrees with the FWS, based on the cases cited earlier, that the "best scientific

and commercial data available" standard cannot require an agency to conduct independent studies, for example conducting a walking tour of an 8.6 million acre site or further testing to determine the effects of various environmental factors.  *See Arizona Cattle Growers' Ass'n v. Kempthorne*, 534 F. Supp. 2d 1013, 1027 n. 6 (D. Ariz. 2008); *Cook Inlet Beluga Whale v. Daley*, 156 F. Supp. 2d 16, 19-20 (D. D.C. 2001).  The Court's remand order is not remotely close to these examples.  The Court is not asking the FWS to conduct independent studies or other further testing.  The information that the FWS contends called into questions the previous recommendations of Manager Panels I and II was "available" and could have been considered. Instead, the Court is ordering that the FWS base its decision on the best scientific information then available about the Slickspot peppergrass.  While they may be more than one path to arrive at the best scientific information, certainly following the procedures that the FWS had already decided from the very beginning were appropriate in this case, would logically lead to a decision based on the best science.

    2.      **Change in Law**

        The Defendant-Intervenors submit that there has been an intervening change in controlling law that dictates the motion to alter or amend be granted.  They argue that the recent Ninth Circuit case, *Lands Council v. McNair*, sets forth the deference that should be given to the review of an agency's decision. 537 F.3d  981 (9th Cir. 2008).  That case involved allegations that the Forest Service violated the National Forest Management Act ("NFMA") and the National Environmental Policy Act ("NEPA").  *Id.* at *4.  While that case and the present one are both governed by the Administrative Procedures Act for review of agency action, *Lands Council* did not in any manner address the Endangered Species Act ("ESA"), and more importantly, did not

involve the "best scientific and commercial data available" standard that is now at issue.[2]

Accordingly, the Court finds that the *Lands Council* case is not controlling.

**C.       Plaintiff's Motion to Alter or Amend Judgment**

In its motion, Plaintiff argues that the Court mistakenly entered judgment before it could

move for relief upon remand and now asks the Court to enter an order directing the FWS to issue

a final listing decision on Slickspot peppergrass no later than March 1, 2009.  Plaintiff maintains

that a court has broad equitable authority to craft relief and that the purpose of the ESA would be

furthered served by the Court imposing a reasonable deadline for the FWS to prepare a new

listing rule.

The ESA was enacted to provide a "program for the conservation of . . . endangered

species . . ."  16 U.S.C. § 1531(b).  Under the ESA, once a proposed rule has been issued, the

Secretary has a year following public comment within which to either publish a final rule

designating the species for protection or withdrawing the proposed rule.  50 C.F.R. § 424.17(a);

*see also* 16 U.S.C. § 1533(b)(6).  Section 4 of the ESA, requiring the Secretary to act on a

proposed rule to list a species as endangered within one year of the date of its publication, is

mandatory.  *Envt'l Def. Ctr. v. Babbitt*, 73 F.3d 867, 871 (9th Cir. 1995).  Plaintiff argues that the

ESA's statutory scheme and purpose underscore the propriety of its request to impose a

reasonable deadline for the FWS to prepare a new final listing rule.

Plaintiff submits that the March 1, 2009 date, providing the FWS eight months from the

date of the Court's initial decision, is reasonable given the facts of this case.  In support of the

reasonableness of its proffered date, Plaintiff submits that the rule would be issued before

---

[2]  The Ninth Circuit even noted in that case that NEPA did not require the Forest Service to decide whether the Environmental Impact Statement was "based on the best scientific methodology available."  *Id.* at *19.

**Memorandum Decision and Order - Page 9**

commencement of the next grazing season and that the bulk of activity involved in issuing the rule would occur in Fiscal Year 2009.  Lastly, Plaintiff stresses that for more than a decade, the FWS has been aware of the decline in Slickspot peppergrass populations and habitat, making it woefully overdue for protection and the situation for Slickspot peppergrass becomes more grave with each passing month.

In response, the Federal Defendants argue that the Court has granted legally appropriate relief and should defer to the FWS's reasonable schedule for complying with the remand order because courts are to avoid dictating methods, procedures and time dimensions for an agency's reconsideration of an action.  The FWS submits it can complete the new listing rule by October 1, 2009, a deadline that would allow the FWS to open at least one 30-day public comment period, compile and synthesize all available scientific information, consider and respond to comments received during the comment period and prepare a new listing determination.  *See* Declaration of Bryan Arroyo, Docket No. 54-2.

Plaintiff contends that this proposed date violates the ESA's mandatory 12-month time-frame for issuance of a new final listing rule.  As for the submission of Bryan Arroyo, Assistant Director for Endangered Species for the U.S. Fish and Wildlife Service, Plaintiff argues it contains nothing that justifies the October 1, 2009 deadline.  Specifically, Plaintiff takes issue with the proposed date because Mr. Arroyo does not provide support for why it will take until the end of September for the FWS to publish notice opening public comment nor explain why budgetary limitations are affecting the FWS's ability to move more quickly.

A district court has "broad latitude in fashioning equitable relief to remedy an established wrong."  *Natural Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 999 (9th Cir. 2000).  *See*

*also Colorado River Cutthroat Trout v. Kempthorne*, 448 F. Supp. 2d 170, 177-78 (D.D.C. 2006).
In *Colorado River*, the court found the FWS's 90-day review of the plaintiff's petition was
contrary to law because the FWS solicited information and opinions from limited outside sources.
*Id.* at 177.  The court ordered the FWS to undertake a full status review within nine months, the
time allotted under statute.  *Id.* at 178.  *See also Save Our Springs v. Babbitt*, 27 F. Supp. 2d 739,
749 (W.D. Tex. 1997) (after finding that the Secretary's were arbitrary and capricious, the court
remanded to the Secretary to make a listing determination consistent with the opinion not later
than 30 days from the date of the order); *Northern Spotted Owl, et. al v. Hodel*, 716 F. Supp. 479,
483 (W.D. Wash. 1989) (the court remanded to the FWS to provide analysis for its decision that
listing was not warranted within 90 days of the court's order).

The Court's decision reversing and remanding the January 2007 listing decision was
issued on June 4, 2008.  The Court has now clarified that order as requested by the Federal
Defendants.  Due to this clarification, the Court will give the FWS until October 1, 2009 to issue
a new final listing determination.  This holding provides the FWS with a sufficient amount of
time to complete the listing process and issue the final rule, and is in line with the ESA's twelve-
month deadline.

/

/

/

/

/

/

## <u>ORDER</u>

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1)      The Federal DefeLendants' Motion to Alter or Amend the Judgment and/or For Clarification (Docket No. 48), filed June 18, 2008, be **DENIED;**

2)      Plaintiff's Motion to Alter or Amend Judgment (Docket No. 49), filed June 18, 2008, be **GRANTED IN PART and DENIED IN PART.**



DATED: October 17, 2008

Honorable Mikel H. Williams
United States Magistrate Judge

**Memorandum Decision and Order - Page 12**